UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20329-ALTMAN/Reid

**JOSE RICARDO HERRERA**,

    *Plaintiff*,

*v.*

**WALMART, INC.**,

    *Defendant.*

_____/

## **ORDER**

Walmart, Inc., our Defendant, asks us to enter judgment in its favor on the Plaintiff's single negligence count. After careful review—and taking the evidence in the light most favorable to the Plaintiff—we **DENY** Walmart's motion for summary judgment and proceed to trial.

### THE FACTS[1]

On the evening of December 29, 2021, Jose Ricardo Herrera, our Plaintiff, entered the Walmart at 3791 N.W. 167th Street in Miami Gardens, Florida. *See* Joint Statement of Undisputed

---

[1] "The facts are described in the light most favorable to [the non-moving party]." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 n.2 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). In considering Walmart's motion, then, we describe the facts in the light most favorable to the Plaintiff and rely on Walmart's Statement of Material Facts [ECF No. 33] *only* where the Plaintiff has failed to genuinely dispute a proposition Walmart has asserted there, *see* S.D. FLA. L.R. 56.1(b) ("All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement provided that the Court finds that the movant's statement is supported by evidence in the record.").

Facts ("JSUF") [ECF No. 39] ¶ 1; *see also* Deposition of Jose Ricardo Herrera ("Herrera Dep.") [ECF No. 33-3] at 46:5 ("It was in the evening."). Herrera was "there to buy bread[,] ham, and cheese . . . to make a sandwich." Herrera Dep. at 45:14–24. After procuring "some croissants . . . at the front of the store," Herrera "head[ed] towards the pantry . . . where the ham and cheese is." *Id.* at 46:11–19. As Herrera was "walking towards the pantry," *id.* at 53:4–11, he slipped and fell on a wipe that had been left on the floor, *see id.* at 49:20–21 ("It was one of those wipies that are used to clean the . . . shopping cart handles."); *see also* JSUF ¶ 3 ("Plaintiff alleges that he slipped and fell on slippery debris on the floor at the subject Walmart store."). According to surveillance footage of the incident, Herrera fell at "approximately 8:14:50 p.m." JSUF ¶ 4; *see also* Surveillance Video [ECF No. 33-1] at 01:09:05.

Herrera didn't see any debris on the floor before he fell. *See* Herrera Dep. at 49:8–10 ("Q. . . . And did you see any debris or substances on the floor before you fell? A. No, sir, I didn't."). Nor did Scott Igbinoba, a Walmart employee who walked by the pantry pushing a cart "at approximately 8:00:56 p.m. and 8:06:44 p.m." JSUF ¶ 5; *see also* Declaration of Scott Igbinoba ("Igbinoba Decl.") [ECF No. 33-2] ¶ 4 ("On each such occasion, I observed the floor as I walked through the area, and I did not see any debris, substance, or potentially dangerous conditions on the floor in the area."). After Herrera fell, however, he noticed that there were "[t]hree or four" more wipes on the floor in "the aisle where the pantry is." Herrera Dep. at 51:13–52:6. Herrera doesn't know how long the wipes had been on the floor before he fell, *id.* at 58:24–59:1 ("Q. Do you know how long it had been on the floor before you fell? A. Definitely not."), or where they came from, *id.* at 59:2–3 ("Q. Do you know how it got on the floor? A. I have no idea.").

According to Herrera, the wipe was about "[t]he size of a . . . napkin," *id.* at 60:3–6, and was "flat up against the ground" when he first saw it after he fell, *id.* at 61:3–5. Herrera noticed that the wipe was "filthy," "dark," and "dirty." *Id.* at 61:6–8; *see also id.* at 61:15–16 ("It was a dark color. It was gray from dirt."). Because the wipe was "very dirty," Herrera surmised that other "people [had]

2

stepped on it before . . . or [that] shopping carts had gone through it." *Id.* at 58:6–9; *see also id.* at 58:13–14 ("It was not like somebody has cleaned his hands, just dump[ed] it."). But Herrera didn't see the condition of the wipe before he fell, *id.* at 58:16–17 ("Q. . . . Did you see it dirty before you fell? A. No, sir."), and he didn't see anyone else step on it, *id.* at 58:18–20 ("Q. . . . Did you see anybody step on it before you fell? A. No, sir."), or run over it with a cart, *id.* at 58:21–23 ("Q. . . . Did you see anybody run over it with a cart before you fell? A. No, sir.").

Soon after he fell, Herrera began to experience "pain on [his] neck . . . [and] lower back." *Id.* at 90:4–5; *see also id.* at 89:6–11 ("Q. . . . [W]hen [was] the first time you . . . sought treatment for any of your injuries? A. The following day. . . . I went to a chiropractor."). And, on September 11, 2022, Herrera sued Walmart, Inc. ("Walmart"), our Defendant, in Florida state court, alleging one count "of negligence . . . as a result of injuries he allegedly sustained" from the fall. Notice of Removal [ECF No. 1] at 1. Walmart removed the case to federal court on January 27, 2023. *See ibid.*

Walmart has since filed a Motion for Summary Judgment ("Def.'s MSJ") [ECF No. 32], arguing that it's entitled to judgment as a matter of law because Herrera "has failed to adduce evidence sufficient to establish that Walmart had either actual or constructive notice of the alleged substance on its store floor, and therefore, did not breach its duty of care." Def.'s MSJ at 3. We'll consider (and deny) that motion here.

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at

3

248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, then, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue

of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).[2]

**ANALYSIS**

To prevail on his negligence claim, Herrera must show "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Wilson–Greene v. City of Miami*, 208 So. 3d 1271, 1274 (Fla. 3d DCA 2017). Florida statutory law has "modified a business's duties when its invitees"—like Herrera—"are injured by 'transitory foreign substances.'" *Lago v. Costco Wholesale Corp.*, 233 So. 3d 1248, 1250 (Fla. 3d DCA 2017) (quoting FLA. STAT. § 768.0755); *see also Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 317 (Fla. 2001) (defining "transitory foreign substance" as "any liquid or solid substance, item or object located where it does not belong"). To establish that Walmart owed him a duty of care, then, Herrera "must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." FLA. STAT. § 768.0755(1). In our case, Herrera proceeds only on a theory of constructive knowledge—*viz.*, that Walmart "should have known" of the dangerous condition. *Knoll v. Paradise Beach Homes, Inc.*, 789 F. App'x 809, 813 (11th Cir. 2019).

---

[2] In ruling on summary-judgment motions, Florida's state courts have held that "the stacking of inferences is not permitted." *Wilson-Greene v. City of Miami*, 208 So. 3d 1271, 1275 (Fla. 3d DCA 2017). In other words, "if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences." *Cohen v. Arvin*, 878 So. 2d 403, 405 (Fla. 4th DCA 2004) (quoting *Nielsen v. City of Sarasota*, 117 So. 2d 731, 733 (Fla. 1960)). But this "rule" obviously has no application in federal court. "Although Florida law provides the substantive rule of decision in this diversity case, we must decide the propriety of summary judgment in accordance with the federal standards fixed in Rule 56 of the Federal Rules of Civil Procedure." *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 931–32 (11th Cir. 2018) (cleaned up). "Because a federal standard governs our assessment of whether an inference is allowable, we do not apply state-law rules against 'pyramiding' or 'stacking' inferences." *Id.* at 932.

A plaintiff "may prove constructive knowledge through 'circumstantial evidence,' showing *either* that 'the dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition' *or* that 'the condition occurred with regularity and was therefore foreseeable.'" *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1283 (S.D. Fla. 2021) (Altman, J.) (cleaned up) (quoting FLA. STAT. § 768.0755(1)). The dangerous condition needn't have persisted for very long to impute constructive notice on the defendant. *See, e.g.*, *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 922 (11th Cir. 2020) (reversing a directed verdict on issue of constructive notice where the "unsafe condition existed for at least ten minutes"); *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 798 (11th Cir. 2019) (reversing summary judgment and finding that "eighteen minutes was a sufficient period to present a genuine issue of material fact" on question of constructive notice).

Courts look to several factors to assess how long the substance has been on the floor, including "evidence of footprints, prior track marks, changes in consistency, drying of the liquid," *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1012 (11th Cir. 2019), and whether the "offending liquid" was "dirty" or "scuffed," *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 429 (Fla. 2d DCA 2020). Courts are also more likely to find that a business had constructive notice when the business's employees were "in the vicinity of where the fall occurred." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 203 (11th Cir. 2019) (quoting *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 261 (Fla. 2002)). And that makes sense. After all, "with employees in the area, a jury can reasonably infer (at least where the condition is visible) that those employees *should have seen* the dangerous condition." *Torres*, 555 F. Supp. 3d at 1283–84.

Drawing all reasonable inferences in Herrera's favor, *see Pennington*, 261 F.3d at 1265 (at summary judgment, we must "review the facts and all reasonable inferences in the light most favorable to the non-moving party"), we think a reasonable jury *could* find that Walmart had constructive notice

6

of the wipe Herrera slipped on. Specifically, "two pieces of circumstantial evidence—when considered in a light most favorable to the non-moving party—create a genuine dispute over the length of time" the wipe was on the floor before Herrera fell. *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1170 (11th Cir. 2023).

*First*, Herrera's deposition testimony that the wipe was "very dirty"—and that it looked as though "people [had] stepped on it before . . . or shopping carts had gone through it"—could lead a reasonable jury to find that Walmart was on constructive notice of the wipe's presence on the floor. Herrera Dep. at 58:6–9. As the Eleventh Circuit recently observed, "[t]ime and again, Florida's appellate 'courts have found constructive notice' when 'the offending liquid was dirty, scuffed, or had grocery-cart track marks running through it,' or if there was 'other evidence such as footprints, prior track marks, changes in consistency, or drying of the liquid.'" *Sutton*, 64 F.4th at 1170 (cleaned up) (quoting *Norman*, 301 So. 3d at 429–30); *see also ibid.* (collecting cases).

Although we don't *know* that the wipe was dirty *before* Herrera stepped on it, *see* Herrera Dep. at 58:16–17 ("Q. . . . Did you see it dirty before you fell? A. No, sir."); Def.'s MSJ at 12 ("Plaintiff does not know how long the debris had been on the floor before the alleged incident and thus how and when it became dirty."), Herrera needn't prove that it wasn't to survive summary judgment, *see Palavicini*, 787 F. App'x at 1010 (summary judgment must be denied if "the record evidence establishes a genuine issue of material fact regarding whether [the defendant] had actual or constructive notice of the dangerous condition"); *see also Sutton*, 64 F.4th at 1172 ("Florida law does not demand direct evidence about who or what caused the dangerous substance and when exactly it happened."). So, while a jury *could* find that the wipe was dirty only because Herrera stepped on it, "an equally compelling inference from the dirty appearance of the [wipe] is that it had gone undetected on the floor for a sufficient period of time to place [Walmart] on constructive notice." *Sutton*, 64 F.4th at 1171 (quoting *Colon v. Outback Steakhouse of Fla., Inc.*, 721 So. 2d 769, 771 (Fla. 3d DCA 1998)).

7

Walmart insists that this question (Who stained the wipe?) shouldn't reach the jury because the "Plaintiff's testimony alone, without any 'additional facts' showing that the substance was on the ground for a period long enough to impute constructive notice, does not create a disputed issue of material fact as to constructive notice[.]" Defendant's Reply ("Def.'s Reply") [ECF No. 42] at 2. In saying so, Walmart relies on three district court cases—all of which misapply Florida law. *See* Def.'s MSJ at 11 ("Plaintiff's claim cannot survive summary judgment based on her unsubstantiated argument that there were 'skid mark[s]' in the unidentified substance indicating that the spill was on the floor for a long period of time." (quoting *Rubiano v. Costco Wholesale Corp.*, 2016 WL 7540571, at *3 (S.D. Fla. Oct. 4, 2016) (Ungaro, J.))); Def.'s MSJ at 12 ("[T]he allegations regarding the footprints and cart tracks form nothing but a 'scintilla' of evidence[.]" (quoting *Hernandez v. Sam's E., Inc.*, 2021 WL 1647887, at *5 (S.D. Fla. Apr. 26, 2021) (Ruiz, J.))); Def.'s MSJ at 12 ("[S]ummary judgment [should be affirmed] where customer's 'arguments [would] require the court to make impermissible inferential leaps and assumptions[.]'" (quoting *Granela v. Walmart Stores E., L.P.*, 2021 WL 768271, at *4 (S.D. Fla. Feb. 26, 2021) (Gayles, J.))). We aren't (it goes without saying) bound by the decisions of our district court colleagues. *See, e.g.*, *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) ("A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court[.]"). And, in *Sutton*, the Eleventh Circuit *explicitly* noted that these three cases (*Rubiano*, *Hernandez*, and *Granela*)—all of which "suggest that a plaintiff needs something more than a track mark or footprints to reach a jury"—"do not accurately recount Florida law." *Sutton*, 64 F.4th at 1171 n.2 (citing *Woods v. Winn Dixie Stores, Inc.*, 621 So. 2d 710, 711 (Fla. 3d DCA 1993)). We're oath-bound to follow the pronouncements of our circuit court. *See, e.g.*, *Fox*, 937 F.2d at 1570 ("[A] district court in this circuit is bound by [the Eleventh Circuit's] decisions."); *Ramos v. Boehringer Manheim Corp.*, 896 F. Supp. 1213, 1215 (S.D. Fla. 1994) (Mishler, J.) ("Certainly, this Court is bound by the decisions of the Court of Appeals for the Eleventh Circuit and the Supreme Court[.]").

So, while Walmart is correct that "the record must contain additional facts in support of liability" to survive summary judgment, *Delgago v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011), Walmart confuses what these additional facts must be. Because "the mere presence of water on the floor is not enough to establish constructive notice," Florida law requires the plaintiff to present "additional facts . . . that would support [inferring] constructive notice." *Ibid.* (first citing *Broz v. Winn–Dixie Stores, Inc.*, 546 So.2d 83, 83 (Fla. 3d DCA 1989); then citing *Winn Dixie Stores, Inc. v. White*, 675 So.2d 702, 703 (Fla. 4th DCA 1996)). In other words, the plaintiff must adduce some fact in addition to "the mere presence" of the substance—not some fact in addition to the dirt and scuff marks on the substance. Put another way, the dirt and scuff marks *are* the additional facts the plaintiff must submit to survive summary judgment. *See, e.g.*, *Sutton*, 64 F.4th at 1171 n.2 (citing *Woods*, 621 So. 2d at 711 ("Tracks in a substance generate a sufficient inference of constructive notice." (cleaned up)); *Snider-Hancox v. NCL Bah. Ltd.*, 2018 WL 6308683, at *6 (S.D. Fla. Sept. 26, 2018) (Martinez, J.) (denying summary judgment where there was "a footprint in the liquid as well as dirt and grime in the puddle prior to the fall"). Viewed in this proper light, Herrera's testimony that the wipe looked as though "people [had] stepped on it before . . . or shopping carts had gone through it," Herrera Dep. at 58:7–9, is sufficient to allow a reasonable jury to infer constructive notice, *see Cisneros v. Costco Wholesale Corp.*, 754 So. 2d 819, 820 (Fla. 3d DCA 2000) (reversing summary judgment where the plaintiff testified that she observed "a few wheel tracks and several footprints had been made" in the substance she slipped on).

That this fact comes from Herrera's own testimony doesn't make it any less relevant here.[3] Walmart bizarrely tells us that we shouldn't credit Herrera's "self-serving testimony regarding the post-

---

[3] In asking us to discount Herrera's testimony, Walmart appears to want us to apply Florida's summary-judgment rules in federal court. *See, e.g.*, *Berbridge*, 728 F. App'x at 932 ("Because a federal standard governs our assessment of whether an inference is allowable, we do not apply state-law rules against 'pyramiding' or 'stacking' inferences."). For instance, Walmart directs us to *Encarnation v.*

incident appearance and characteristics of the alleged debris[.]" Def.'s Reply at 2. But we "do not . . . make credibility determinations [at summary judgment]," *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016), because that's what juries are for, *see Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." (cleaned up)). Since this testimony, when taken in the light most favorable to Herrera, "is sufficient to create a genuine issue of material fact" on the crucial question of how long the wipe was on the floor, *Sutton*, 64 F.4th at 1172 (citing *Woods v. Winn Dixie Stores, Inc.*, 621 So. 2d 710, 711 (Fla. 3d DCA 1993)), the jury will get to answer that question at trial.

*Second*, the Surveillance Video likewise creates a genuine dispute of material fact on the issue of Walmart's constructive notice. The Surveillance Video captures the scene in the aisle where the fall occurred from 7:16:50 p.m. to 8:25:50 p.m., and it "shows [Herrera] falling at approximately 8:14:50 p.m." JSUF ¶ 4. By itself, the video doesn't tell us much about the fall. At 8:14:50 p.m., we see Herrera (from the waist up) enter the frame at the bottom of the screen, stumble, and fall. *See* Surveillance Video at 00:58:04–00:58:08. But we can't see Herrera's feet or the wipe on which he slipped until after

---

*Lifemark Hospitals of Florida*, 211 So. 3d 275 (Fla. DCA 3d 2017), a state-court case that "categorically rejected plaintiff's argument that her testimony of the substance being 'oily, dirty, and dark,' in and of itself was sufficient to create an issue for the jury on constructive notice." Def.'s MSJ at 12 (quoting *Encarnation*, 211 So. 3d at 278). But *Encarnation* relied on Florida's rule against stacking inferences at summary judgment. *See Wilson-Greene*, 208 So. 3d at 1275 ("[T]he stacking of inferences is not permitted."). That rule required, "[f]or such testimony to create a jury issue," that the jury be able to "reasonably conclude that the substance was on the floor long enough to have become discolored *without assuming other facts*, such as [that] the substance, in its original condition, was not 'oily,' 'dirty' and 'dark,'" *Encarnation*, 211 So. 3d at 278 (emphasis added & cleaned up). But "federal courts do not prohibit inference stacking," *McNeal v. Walmart Stores E., LP*, 2023 WL 145012, at *2 (M.D. Fla. Jan. 10, 2023) (Chappell, J.)—a fact that undermines the relevance of *Encarnation* and the other state-law cases on which Walmart relies, *see* MSJ at 11 ("[W]ithout more—the 'facts indicate that the liquid was not on the floor for a long period of time prior to the incident.'" (quoting *Oliver*, 291 So. 3d at 130)).

10

he falls. *See ibid.* The wipe, in fact, isn't in the frame for the preceding fifty-eight minutes of footage. *See id.* at 00:00:00–00:58:08.

As here, the video evidence in *Sutton* "never show[ed] anyone dropping [the substance] on the floor." 64 F.4th at 1172. As the Eleventh Circuit explained there, "[a] reasonable jury could infer from the absence of a clear moment when the [substance] fell to the floor in the video that the [substance] had been on the floor for more than one hour—far exceeding the time required for constructive knowledge." *Ibid.* (citing *Winn Dixie Stores, Inc. v. Williams*, 264 So. 2d 862, 864 (Fla. 3d DCA 1972)). Since fifty-eight minutes—the length of our Surveillance Video before Herrera's fall—likewise "far exceed[s] the time required for constructive knowledge," *ibid.*; *see also Williams*, 264 So. 2d at 864 ("[A]t least fifteen to twenty minutes [is] sufficient for defendants to be charged with knowledge of the condition and a reasonable time in which to correct it." (citing *Little v. Publix Supermarkets, Inc.*, 234 So. 2d 132 (Fla. 4th DCA 1970))), a reasonable jury in our case could similarly infer that the wipe was on the floor long enough to put Walmart on constructive notice.

Walmart tries to distinguish *Sutton* by arguing that, "[h]ere, unlike *Sutton*, it is not undisputed that the area was not inspected for at least ten minutes prior to the incident." Def.'s Reply at 9. The double negative makes this sentence hard to follow. But we interpret Walmart to mean that, in our case, the parties *do* dispute whether the area was inspected at least ten minutes before Herrera fell. As our reformulation of Walmart's point should make plain, though, this dispute of material fact makes us *more* (not less) inclined to deny summary judgment.

The video depicts a Walmart employee, Scott Igbinoba, walking by the pantry twice before Herrera's fall—first at 8:00:56 p.m. (approximately fourteen minutes before the fall), and again at 8:06:44 p.m. (approximately eight minutes before the fall). *See* JSUF ¶ 5. In his first appearance, we see Igbinoba enter from the left of the frame and proceed to walk past the pantry on its left before exiting at the bottom of the frame. *See* Surveillance Video at 00:44:06–00:44:12. When Igbinoba

11

reappears on camera (about six minutes later), we watch him (from behind) push a large cart of merchandise past the pantry on the left and then exit the frame. *See id.* at 00:49:55–00:50:06. Igbinoba tells us that he "observed the floor as [he] walked through the area, and . . . did not see any debris substance, or potentially dangerous conditions on the floor in the area" on either occasion. Igbinoba Decl. ¶ 4. He also says that he "did not place, drop, [or] spill [anything as he] walked through the area of the alleged incident," and that "[n]othing from the cart [he] was pushing fell on the floor[.]" *Id.* ¶¶ 5–6. To Walmart, "the only competent record evidence regarding [Igbinoba's] actions is his uncontroverted declaration in which he averred . . . that he observed the floor" and saw no debris. Def.'s Reply at 2. In saying so, however, Walmart wholly ignores the evidence that may be reasonably inferred from the video. *See Tallahassee Med. Ctr., Inc. v. Kemp*, 324 So. 3d 14, 16 (Fla. 1st DCA 2021) ("[A plaintiff] may use circumstantial evidence—like the video evidence here—to prove her case.").

The parties hotly contest whether Igbinoba can be seen observing the floor the first time he appears on camera. *Compare* Pl.'s Resp. at 5 ("Mr. Igbinoba, the first time we observe him at 8:00:56 p.m., is not engaged in any sort of inspection of the floor, and is simply walking and looking straight ahead[.]"), *with* Def.'s Reply at 7 ("That is simply not true. The video clearly shows Mr. Igbinoba observing the floor where Plaintiff fell[.]"). To say that the video "clearly" shows anything is (at best) an overstatement. While we can see Igbinoba walk past the pantry, *see* Surveillance Video at 00:44:06–00:44:12, the "out of focus and over-exposed" quality of the video makes it difficult to evaluate Igbinoba's line of sight, Pl.'s Resp. at 7. We therefore believe that "a reasonable juror viewing the video could conclude that [Igbinoba] was not 'inspecting' the premises" as he walked by." *Bosire v. Kroger Co.*, 2015 WL 12856120, at *5 (N.D. Ga. Dec. 14, 2015) (first citing *Doudeau v. Target Corp.*, 572 F. App'x 970, 972 (11th Cir. 2014); then citing *Fratesi v. Circus Circus Miss., Inc.*, 2011 WL 160626, at *3 (E.D. Ark. Jan. 18, 2011)); *see also Cressman v. Steak N Shake, Inc.*, 2019 WL 4804265, at *6 (N.D. Ga.

Aug. 2, 2019) (denying summary judgment where "[i]t is difficult to conclude from viewing the Video whether [the employee] looked down at the floor").

When Igbinoba reappears in the frame at 8:06:44 p.m., his back is to the camera for the entire time he's on screen, making it impossible to say *where* he's looking. *See* Surveillance Video at 00:49:55–00:50:06. According to Walmart, because "the video does not show where he was looking leading up to the incident area[,] . . . Mr. Igbinoba's declaration is the only evidence about what he observed when he walked through the incident area" the second time. Def.'s Reply at 8. To support this view, Walmart directs us to *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126 (Fla. 4th DCA 2020),[4] where the Fourth DCA held that the fact that a "video is not clear enough to determine exactly where someone was looking . . . does not create a material issue of fact," *id.* at 129. In that case, however, no other "facts suggest[ed] . . . [that the] surrounding liquid [was] on the ground for enough time to impute constructive knowledge" on the defendant, leaving "the employee's affidavit as the only evidence" as to "where the employee was looking when he passed by the incident area." *Id.* at 129–30. That's simply not true here, since Herrera has created a genuine dispute about the credibility of Igbinoba's testimony by showing that the wipe appeared "very dirty . . . [as if] people [had] stepped on it before . . . or shopping carts had gone through it[.]" Herrera Dep. at 58:6–9; *see also Sutton*, 64 F.4th at 1172 ("While Wal-Mart employee Orilus inspected the area shortly before the fall and did not see the grape, Sutton rebutted this with a proffer about a track mark and footprints."). Taking this evidence in the light most favorable to Herrera, a reasonable jury *could* find that the wipe was on the floor long enough to put Walmart on constructive notice, and that Igbinoba simply missed it as he walked by. That's enough for Herrera to survive summary judgment here.

\* \* \*

---

[4] *See* Def.'s Reply at 7; *see also* Def.'s MSJ at 11.

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion for Summary Judgment [ECF No. 32] is **DENIED**.

2. The Clerk shall **REOPEN** this case. By **April 8, 2024**, the parties shall submit a joint scheduling report, proposing dates for all remaining pre-trial deadlines and trial.

**DONE AND ORDERED** in the Southern District of Florida on March 25, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record